**UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT**

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | No. 3:11-CR-194 (SRU) |
| DAVID ALVARADO | |

**<u>MEMORANDUM OF DECISION</u>**

Defendant David Alvarado has asked the court to hold that he is not subject to a
sentencing enhancement pursuant to the Armed Career Criminal Act ("ACCA" or "the Act"), 18
U.S.C. § 924(e).  *See* U.S.S.G. § 4B1.4.  Specifically, Alvarado argues that he has not committed
the requisite three predicate offenses for purposes of the ACCA because two of his prior
convictions for third degree burglary do not constitute a "violent felony" as the Act defines that
term.

The ACCA provides a 15-year mandatory minimum sentence for any person who violates
section 922(g) and "has three previous convictions  . . . for a violent felony or serious drug
offense, or both, committed on occasions different from one another."  18 U.S.C. § 924(e)(1).
The Act defines a "violent felony" to include:

> [a]ny crime punishable by imprisonment for a term exceeding one year . . . that (i) has as
> an element the use, attempted use, or threatened use of physical force against the person
> of another; or (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise
> involves conduct that presents a serious potential risk of physical injury to another . . . .

18 U.S.C. § 924(e)(1)(B).

Alvarado's criminal history includes, among others, the following three Connecticut state
court convictions: (1) a February 22, 2002 conviction for robbery in the second degree; (2) a

February 22, 2002 conviction for burglary in the third degree; and (3) a July 27, 2004 conviction for burglary in the third degree.  The government contends that these three convictions are sufficient to trigger the ACCA's 15-year mandatory minimum.

Under the Supreme Court's decision in *Taylor v. United States,* in order to determine whether a state conviction qualifies as a predicate offense under the ACCA, courts must compare the specific state statute to a generic federal category of crime.  495 U.S. 575 (1990).  Under what has come to be known as the "categorical approach," the Supreme Court held that a state conviction for burglary would qualify as a federal crime of violence if "regardless of [a state statute's] exact definition or label," a defendant has been convicted of a crime "having the basic elements" of a "generic . . . burglary."  *Id.* at 598.

Connecticut's statute defining third degree burglary is broader than the federally adopted "generic" equivalent, which consists of "the unlawful or unprivileged entry into . . . a building or other structure, with the intent to commit a crime."  *Id.* at 599.  Connecticut General Statutes section 53a-103(a) provides: "[a] Person is guilty of burglary in the third degree when he enters or remains unlawfully in a building with intent to commit a crime therein."  The Connecticut General Statutes define "building" as,

> in addition to its ordinary meaning, ["building"] includes any watercraft, aircraft, trailer, sleeping car, railroad car or other structure or vehicle or any building with a valid certificate of occupancy.

Conn. Gen. Stat. § 53a-100.

Thus, for Alvarado's third degree burglary convictions to qualify as predicate convictions for purposes of the ACCA, the court must determine that his convictions stemmed from conduct that fell within the narrower, federally adopted "generic" definition.  *See United States v. Brown*, 514 F.3d 256, 265 (2d Cir. 2008).

- 2 -

The categorical approach limits judicial fact-finding to the existence of a prior conviction and involves the legal determination of the statutory elements of the crime. *James v. United States*, 550 U.S. 192, 202 (2007) (citing *Shepard v. United States*, 544 U.S. 13, 17 (2005)). Where there has been no trial, under the "modified categorical approach," the court is entitled to look to "the terms of the charging document [or] the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant." *Shepard*, 544 U.S. at 26. Here, the transcript of the pertinent plea colloquy shows that Alvarado's conduct in one of the two contested predicate offenses involved Alvarado's theft of interior accessories from an unoccupied parked car.[1]

The unlawful taking of interior accessories from an unoccupied parked car does not constitute conduct that falls within *Taylor*'s generic definition of burglary. Although Alvarado may have unlawfully entered the vehicle to steal interior accessories, a vehicle does not constitute a "building or other structure," as the generic definition provided in *Taylor* requires. In any event, the government does not dispute that it is unable to rely on the plea transcript to narrow the scope of the statutory charge. Instead, the government argues that the modified categorical approach is unnecessary here because Connecticut's third degree burglary statute falls within the ACCA's so-called residual clause.

The government contends that Alvardo has committed a predicate offense because the underlying offense "otherwise involves conduct that presents a serious potential risk of physical injury to another." *See* 18 U.S.C. § 924(e)(2)(B)(ii). I disagree.

---

[1] Alvarado entered *Alford* pleas, *see North Carolina v. Alford*, 400 U.S. 21 (1970), in each of the third degree burglary charges and, thus, did not confirm the factual basis for his plea, *see United States v. Savage*, 542 F.3d 959, 966 (2d Cir. 2008). The government rightly concedes that it cannot use the plea colloquy in the contested convictions because the convictions were obtained under *Alford* pleas.

The Second Circuit has held that New York's third degree burglary statute categorically qualifies under the residual clause as a Sentencing Guidelines and an ACCA predicate offense. *See United States v. Brown*, 514 F.3d 256 (2d Cir. 2008) (Sentencing Guidelines § 4B1.2(a)(2)); *United States v. Andrello*, 9 F.3d 247 (2d Cir. 1993) (ACCA).  In *Andrello*, the Second Circuit held that the crime of attempted burglary in the third degree under New York law was a violent felony because it presents a serious potential risk of physical injury.  9 F.3d at 249-50.  The central issue in that case was whether an attempt crime constituted the generic burglary crime for purposes of the sentencing enhancement.  Thus, the Second Circuit logically turned to the residual clause because attempted burglary did not require proof of the underlying elements of generic burglary.  Here, the government instead turns to *Andrello* to support its argument that third degree burglary under Connecticut law is categorically a violent felony because it is analogous to New York's third degree burglary statute.  Notwithstanding the government's contrary assertions, third degree burglary under New York law differs from Connecticut third degree burglary in important ways.

Under New York law, "[a] person is guilty of burglary in the third degree when he knowingly enters or remains unlawfully in a building with intent to commit a crime therein." N.Y. Penal Law § 140.20.  New York penal law defines building as:

> in addition to its ordinary meaning, ["building"] includes any structure, vehicle or watercraft used for overnight lodging of persons, or used by persons for carrying on business therein, or used as an elementary or secondary school, or an inclosed motor truck, or an inclosed motor truck trailer . . . .

N.Y. Penal Law § 140.00(2).

The government contends that, because the New York Court of Appeals has deemed a commercial van a "building" for purposes of New York's third degree burglary statute, the Connecticut statute's inclusion of the word "vehicle" without any further specification is

sufficient to render Connecticut third degree burglary a violent felony under the categorical approach.  The New York statute, however, is narrower than the Connecticut statute.  The Connecticut statute, unlike the New York statute, is not limited to vehicles used for overnight lodging, for the carrying on of business, or as a school.  Nor does the Connecticut statute limit itself to enclosed trucks or trailers.  New York law contemplates vehicles in which persons reside or are working or, perhaps, that are on the premises of a work site.  *Cf. People v. Miccione*, 66 N.Y.2d 995, 997 (1985) (commercial van used primarily to transport workers, materials and tools meets statutory definition of a building); *People v. Ruiz*, 502 N.Y.S.2d 453 (App. Div. 1986) (van used to transport people and materials to a jobsite qualifies as a building). Connecticut's statute makes no such distinction and applies to any vehicle.  This distinction is significant, particularly when considered in light of the residual clause's concern with the risk of physical injury.

In *Brown*, the Second Circuit also held that a New York third degree burglary conviction qualified as a crime of violence under the residual clause of U.S.S.G. § 4B1.2(a)(2), which is identical to the residual clause in 18 U.S.C. § 924(e)(2)(B)(ii).  514 F.3d at 265.  Importantly, the Second Circuit noted that the third degree burglary statute was not a burglary for purposes of the sentencing enhancement because the definition of building in the statute included structures other than dwellings.  *Id.*  Instead, the court analyzed the statute under the residual clause and focused on the risk of physical injury inherent in third degree burglary.  The court held that "third-degree burglary inherently poses [the] same risk [as burglary]" because of the possibility of a confrontation between the burglar and a third party.  *Id.* at 267-68.  Thus, if *Brown* is to be used to bring Connecticut's third degree burglary statute within the scope of the residual clause, I must consider the potential risk of physical injury inherent in conduct proscribed by the statute.

- 5 -

Both the *Andrello* and *Brown* decisions noted *Taylor*'s analysis of the legislative history of section 924(e)'s sentencing enhancement provisions.  That legislative history sheds light on the scope of the residual clause and its application to Connecticut's third degree burglary statute. *Taylor* described Congress's view that burglary "inherently poses a risk of physical injury to victims, bystanders, and law enforcement personnel." *Brown*, 514 F.3d at 267.  Testimony at congressional hearings, "pointed out that even though injury is not an element of the offense, *it is a potentially very dangerous offense*, because when you take your very typical residential burglary or *even your professional commercial burglary*, there is a very serious danger to people who might be inadvertently found *on the premises*." *Taylor*, 495 U.S. at 585 (internal quotation marks omitted) (emphases added).  The *Taylor* Court also noted that a violent confrontation might occur between the person committing a burglary and "an occupant, caretaker, or some other person who comes to investigate" when "an offender enters a building to commit a crime." *Id.* at 588.  Finally, *Taylor* pointed to legislative history "indicating that Congress singled out burglary (*as opposed to other frequently committed property crimes such as larceny and auto theft*) for inclusion as a predicate offense . . . because of its inherent potential for harm to persons." *Id.* (emphasis added).

New York's burglary statute limits its reach to the sorts of vehicles where such a heightened risk exists – vehicles where a person might live or commercial vehicles where persons might work.  Connecticut's third degree burglary statute is much broader.  It is telling that the *Andrello* Court specifically distinguished between its ruling and those of other Circuit courts that have concluded that attempted burglary is not a violent felony under the ACCA on the grounds that "the state laws at issue [in those cases] *defined burglary too broadly to require proof of the requisite elements*."  9 F.3d at 250 (citing *Taylor*, 495 U.S. at 591-92) (emphasis

added).  Indeed, the *Taylor* Court specifically noted California's definition of burglary as "so

broad[] as to include shoplifting and theft of goods from a 'locked' but unoccupied vehicle" and

> [t]hus, a person imprudent enough to shoplift or steal from an automobile in California would be found under the Ninth Circuit's view to have committed a burglary constituting a "violent felony" for enhancement purposes – yet a person who did so in Michigan might not.  Without a clear indication that with the 1986 amendment Congress intended to abandon its general approach of using uniform categorical definitions to identify predicate offenses, we do not interpret Congress' omission of a definition of "burglary" in a way that leads to *odd results of this kind*.

495 U.S. at 591 (emphasis added).

The government contends that Connecticut's third degree burglary statute contemplates a

burglary that poses the same risk of confrontation between a burglar and a third party and, thus,

third degree burglary poses an inherent risk of physical injury, making it a violent felony under

the ACCA.  To bolster its argument, the government presents a *Sykes*-inspired, *see United States

v. Sykes*, 131 S. Ct. 2267 (2011), statistical analysis of Connecticut state cases from the last five

years that involved third degree burglary of residences, "non-residences," and vehicles.  The

government's statistics show that "out of the 21 reviewed Connecticut cases, over 42 percent

involved confrontations and over 9.5 percent resulted in injury."  The government, however, has

presented only *one* case of third degree attempted burglary of a vehicle.  And in that case there

was a confrontation but *no injury*.[2]  The most I can take from this analysis is that in the case of

third degree attempted burglary of a vehicle, it is unlikely that physical injury will occur, even

where there is a confrontation.  I cannot see how this analysis supports the government's

---

[2] *See State v. Rosario*, 118 Conn. App. 389 (2009).  It should be noted that in *Rosario* the alleged burglar was chased after he had begun walking away from the car.  It is unclear if the defendant was convicted of third degree burglary for the vehicle-related offense.  The facts available to this court show that defendant unlawfully entered victims' dwelling the next evening and brandished a knife when confronted by a resident, conduct that also falls within Connecticut's third degree burglary statute.

contention that third degree burglary—of a type not categorically generic burglary—poses a serious potential risk of physical injury.

It seems that the government would have this court believe that every crime in which there is the potential for physical confrontation as a result of law enforcement pursuit poses a serious risk of physical injury. In that case, virtually every crime would fall into the ACCA's residual clause. Such a reading of the ACCA is undoubtedly overbroad. *See Begay v. United States*, 553 U.S. 137 (2009). In *Begay*, the Supreme Court held that a conviction for driving under the influence fell outside the scope of the ACCA's residual clause. 553 U.S. 137 (2009). Though statistics showed that driving under the influence presents a "serious potential risk of physical injury," the crime was "simply too unlike the provision's listed examples for [the Court] to believe that Congress intended the provision to cover it." *Id.* at 141-43. According to the majority, because Congress anchored the statute with two specific offenses, it could only have intended the residual clause to cover "similar crimes rather than every crime that presents a serious potential risk of physical injury." *Id.* at 142. Further, the majority noted, the offense at issue was not an ACCA predicate because it was not "purposeful, violent, and aggressive." *Id.* at 144-45. Although the Supreme Court has since modified *Begay*'s approach, the residual clause's scope necessarily remains limited.

The government argues that case law requires only that it show that the statute as a whole, rather than the element of the statute that corresponds to the factual circumstances in which the offense was committed, involves conduct that poses a serious potential risk of physical injury. I cannot reconcile that approach with my reading of the statute. The ACCA requires that "the crime . . . involves conduct that presents a serious potential risk of physical injury to another." The simplest reading of the statute, *Sykes* notwithstanding, is that the crime must

involve certain conduct; the ACCA does not provide that the crime must have "as an element, conduct that presents a serious potential risk of physical injury."  The latter reading would render every crime with a single element that poses a serious potential risk of physical injury an ACCA predicate, the former—and in my view, correct reading of the statute—does not.

In any event, the Supreme Court and this Circuit require that I determine that the "conduct encompassed by the elements of the offense, *in the ordinary case*, presents a serious potential risk of injury to another" that is "comparable to that posed by its closest analog among the enumerated [ACCA] offenses." *United States v. Harrington*, 689 F.3d 124, 132 (2d Cir. 2012) (citing *James*, 550 U.S. at 208).  Accordingly, analysis of an enumerated offense under the residual clause requires that I compare the potential risk of physical injury posed by the element of the offense not included in the generic definition of the crime with the potential risk of physical injury posed by its enumerated analog.  Here, I am faced with an offense, third degree burglary, which has an element—theft from a vehicle—that is not included in the generic definition of its enumerated analog, burglary.  Thus, I must compare the potential risk of physical injury posed by theft from a vehicle with the risk posed by generic burglary.

I do not find theft from a vehicle to be an offense of the type that would justify its inclusion within the residual clause.  Burglary is, indeed, dangerous because it can end in a confrontation leading to violence.  The risk of violence inherent to theft from a vehicle, however, is lower.  Unlike burglary from a building, burglary from vehicle, especially an unoccupied parked car, is much less likely to lead to a violent confrontation for the simple fact that a burglar is unlikely to encounter a person inside a car he is breaking into.  Although it is possible that a bystander might see a person breaking into a car and choose to confront him, this is true of virtually any crime occurring in a place where the public might witness it.

Finally, the government has misapplied the categorical approach.  The categorical approach (and the modified categorical approach, when appropriate) provides a set of simple and well-defined steps.  At step one, a court must determine if the crime is enumerated in section 924(e)(1)(B).  It is undisputed that Connecticut's third degree burglary statute is a burglary statute; "burglary" is an enumerated crime.  Step two, here, requires the court to compare the Connecticut burglary statute to *Taylor*'s generic federal definition of the crime of burglary.  If the state statute is broader than the federal definition of the crime, step three requires the court to examine court records to determine if the conduct underlying conviction for the offense falls into the federal, generic definition.  If, at this step, the underlying conduct does not fall into the generic definition of burglary, the inquiry ends and the crime is not an ACCA predicate offense.

The government, however, has proceeded to a fourth step that requires a court to determine whether the crime, even if it fails under *James*'s and *Shepard*'s categorical or modified categorical approach, nevertheless is categorically a violent felony because it "otherwise poses a serious risk of physical injury."[3]  To permit the government to apply the residual clause to determine whether an offense that already has a direct analogue in the statute is a predicate offense would not only render superfluous the enumerated crimes but would allow the residual clause to define the scope of the statute.  Under the government's approach, any

---

[3] In *United States v. Escalera*, the Second Circuit did not perform the analysis the government asks me to perform. 401 Fed. App'x 571 (2d Cir. 2010).  In that case, the defendant had a prior conviction under Connecticut's third degree burglary statute.  The Court held that that the statute did not fall within *Taylor*'s generic definition of burglary and that in order for the conviction to qualify as an ACCA predicate, the district court was "required to make the factual finding that Escalera's conviction stemmed from conduct which fell within the narrower, federally adopted 'generic' definition."  401 Fed. App'x at 573.  The Court, which cited to *Brown*, did not hold that Connecticut's third degree burglary statute is categorically a "violent felony" because it falls within the ACCA's residual clause.  *Id.*  Rather, it properly limited its analysis to the categorical approach as set forth in *James* and *Shepard*.

crime that poses a serious risk of physical injury constitutes an ACCA predicate.  The Supreme Court rejected that proposition in *Begay* and *Sykes*.  I reject it here.

For the reasons stated above, Alvarado's February 22, 2002 conviction for third degree burglary is not a predicate offense and he, therefore, does not qualify for the ACCA's sentencing enhancement.

Dated at Bridgeport, Connecticut, this 25th day of February 2013.


<u>/s/ Stefan R. Underhill</u>
Stefan R. Underhill
United States District Judge